**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| CATRINA M. THOMAS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )  Case No. 2:25-cv-82-AZ |
| | ) |
| FRANK BISIGNARO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Catrina M. Thomas appeal of the
Commissioner of the Social Security Administration's (the "Commissioner") denial of
disability benefits.[1] For the reasons discussed, the Court agrees with Plaintiff that
the Administrative Law Judge ("ALJ") erred in her consideration and analysis of the
evidence. For the reasons explained below, the ALJ's determination is reversed and
remanded.

### Background

Plaintiff Thomas was 32 years old at the onset of the alleged disability, which
she claims was July 23, 2017. A.R. 15.[2] Thomas graduated high school and was only
sporadically self-employed. A.R. 1102. On the alleged onset date, Thomas suffered a
motor vehicle incident which the presumptive cause of her alleged impairments. *Id.*

---

[1] On June 5, 2025, both parties consented to the jurisdiction of the assigned Magistrate
Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 12.

[2] Citations to the Administrative Record, filed at DE 7, are throughout as "A.R."

Thomas filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on July 19, 2018. A.R. 15. Her claims were denied in the initial application and upon reconsideration, and Thomas thereafter requested a hearing before an ALJ. *Id.* The ALJ issued an unfavorable decision, and when the Appeals Council denied her request for review, she filed a complaint in court. A.R. 1182. The matter was remanded in March 2023, and Thomas and her attorney appeared at a hearing where Thomas, a Vocational Expert (VE), and two doctors testified. A.R. 1093-1152. On October 25, 2024, the ALJ issued a second unfavorable decision, which became the final decision of the Commissioner pursuant to 20 C.F.R. § 404.984(d). A.R. 1068.

At the hearing, the ALJ questioned Thomas, two doctors, and the VE. A.R. 1093-1152. While questioning Thomas, the ALJ asked about the medications Thomas was taking for her mental health. A.R. 1111. Thomas informed her that she was prescribed Prozac and Xanax and affirmed that these were helping her anxiety. When the ALJ questioned the VE, she posed a hypothetical which asked about someone who can:

> …understand, remember, and carry out simple to moderately detailed tasks and that's four to five step instructions. No production rate pace work where each task must be completed within a strict time deadline but could meet end of day goals. Should not supervise the safety of others. Frequently interact with coworkers and supervisors. Occasional interaction with the public with no teamwork or tandem tasks.

A.R. 1147. The VE identified a number of unskilled positions that could be performed with those restrictions, including an assembler and inspector packer and general office helper. A.R. 1147-48. Even with additional restrictions at the sedentary

2

exertional level, the VE identified document preparer, inspector and assembler as examples of available jobs. A.R. 1148. The VE also clarified that someone who is off task 15% of the time would be precluded from work. A.R. 1149.

In her written decision, the ALJ followed the standard five-step process to determine whether Thomas was disabled. At step one, the ALJ determined that Thomas had engaged in substantial gainful activity from January 1, 2022, through December 31, 2022, but had not engaged in substantial gainful activity from July 23, 2017, to December 21, 2021, and from January 1, 2023, to October 25, 2024. A.R. 1074.

At step two, the ALJ determined that Thomas suffered from the following severe impairments: "post-traumatic osteoarthritis of the right ankle, status-post surgical treatment of pilon fracture; asthma; bipolar disorder; generalized anxiety disorder; and post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c))." *Id*. The ALJ held this significantly limits Thomas' ability to perform basic work activities as required by SSR 85-28. *Id*. The ALJ found her "headaches or migraine headaches" to be non-severe because they do not represent more than a minimal effect on her ability to perform basic work. *Id*.

At step three, the ALJ concluded that Thomas does "not have an impairment or combination of impairments that meet or medically equals the severity of" any applicable Listing which would presumptively entitle him to a finding of disability. A.R. 1075. The ALJ also noted that no examining or non-examining physician noted that any of Thomas' impairments equal any of the listed in impairments. *Id*. The ALJ

3

also used the "paragraph B" functional assessment of mental disorders criteria to consider the severity of Thomas' mental impairments both singly and in combination and whether they meet or equal the criteria of listings 12.04, 12.06, and 12.15. *Id.* A review of the medical record led the ALJ to conclude that because Thomas' mental impairments do not cause at least two "marked" limitations, or one "extreme" limitation, paragraph B was not satisfied. A.R. 1075-77.

The ALJ found Thomas has a moderate limitation with understanding, remembering, or applying information. A.R. 1075. Thomas' reported difficulties with certain tasks like household chores appeared to be due to physical impairments rather than mental impairments. *Id.* Thomas also reported that she was able to drive a car, shop by phone, and handle money, which indicate no more than a moderate limitation. *Id.* Mental status examinations showed issues with memory but also noted that Thomas has only a mild limitation. *Id.* The ALJ found a higher limitation then the consultative examiner opined, consistent with the state agency consultants and other evidence in the record. *Id.*

In interacting with others, the ALJ found Thomas has a moderate limitation. A.R. 1076. Thomas reported she is able to spend time with others. A.R. 309. Her other examinations routinely showed anxiety or depressed mood, but they did not result in a significant inability to interact with her providers. A.R. 1076. A consultative expert opined a below-average social functioning, but a medical expert testified to a mild to moderate limitation, which the ALJ found was generally consistent with state agency consultants. *Id.*

The ALJ found Thomas to have a moderate limitation in concentrating, persisting, or maintaining pace. *Id.* Similarly to above, Thomas' reported difficulties with household chores and yard work appeared to be more related to her physical impairments rather than issues with pace or concentration. *Id.* The ALJ again found a moderate limitation consistent with the state agency consultants. *Id.*

In adapting or managing oneself, the ALJ found Thomas also has a moderate limitation. *Id.* The ALJ extensively cited from the record examples that Thomas could attend to her own personal care, and that there was no objective evidence as to abnormal personal care or hygiene. *Id.*

The ALJ also considered whether any of Thomas limitations meet the "paragraph C" criteria. *Id.* She noted that Thomas appears have the capacity to adapt to change in her environment or demands in her personal life. *Id.* Thus, the paragraph C criteria were not met. *Id.*

At step four, the ALJ determined Thomas' Residual Functional Capacity (RFC) for the time periods noted above as:

> [P]erform[ing] light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can only stand/walk for four (4) hours in an 8-hour workday. The claimant is limited to no more than occasional pushing and pulling with the right lower extremity. The claimant can frequently balance and occasionally crouch. She can frequently climb ramp and stairs and never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme heat, humidity, and hazards (such as unprotected heights and dangerous moving machinery). The claimant can understand, remember, and carry out simple to moderately detailed tasks (i.e., 4-5 step instructions). The claimant is unable to conduct production rate pace work where each task must be completed within a strict time deadline, but the claimant is able to meet end of day goals. The claimant should not supervise the safety of others. The claimant can tolerate frequent interaction with coworkers and supervisors,

with no more than occasional interaction with the public; the claimant is unable to conduct teamwork or tandem tasks.

A.R. 1077. The ALJ stated, as is standard, that she "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* The ALJ then moved to the substantive analysis of the objective evidence from the record. A.R. 1077-84.

First, the ALJ notes that while Thomas alleges she is unable to work, the symptoms of her severe impairments, "right ankle pain, neuropathy, exertional, functional and postural difficulties," do not prevent her from working at jobs consistent with her RFC. A.R. 1077-78. The ALJ found Dr. Kwock's opinion to be persuasive. A.R. 1078. Dr. Kwock, an orthopedic specialist, found light exertional ability with the ability to stand and walk for up to four hours per workday, to be consistent with the evidence. *Id.* By contrast, the ALJ did not find persuasive the opinion of Dr. Okolocha, a primary care physician who recommended amputation. *Id.* Dr. Kwock reviewed the entire medical record, and the ALJ found his explanation with reference to the record to be persuasive. *Id.*

The ALJ further reviewed Thomas' medical history. On July 23, 2017, Thomas was involved in a motor vehicle accident, which caused facial fractures and right lower leg fractures and injuries. A.R. 1078, 350-56. She required surgical repair to her right and left lower legs. A.R. 1078, 659-660. Additional surgery required the placement of internal hardware, which caused further issues and later had to be removed. A.R. 1078, 656-64, 941. These records and associated imaging and testing are not dispositive as to functional ability, so the ALJ further relied on Thomas'

examinations. A.R. 1078. While Thomas showed decreased motor strength in some clinic findings, by March 2018 she was documented as weight bearing and not requiring an ambulatory aide. A.R. 1079, 622. Later clinical findings showed consistent symptoms, such as tenderness, swelling, and decreased range of motions. A.R. 1079. The ALJ also noted an asthma exacerbation, but Thomas did not require hospitalization as a result, so the ALJ only included limited pulmonary irritant limitations in her RFC. *Id.* Consequently, the ALJ found Dr. Kwock's opinion to be well-supported by the medical record. *Id.*

The ALJ next examined Thomas' documented fatigue and neuropathy. A.R. 721, 872. While noted as symptoms in her examinations, the record did not show any objective evidence of those symptoms, such as diagnostic testing or displays of symptomatology. A.R. 1080. The ALJ determined she is unable to analyze subjective complaints unsupported by the record. *Id.* Then, in October 2018, Thomas underwent a state agency consultative medical examination. A.R. 677. Thomas indicated she had no headaches or dizziness. A.R. 678. Though she showed some difficulty walking, she could do so without an assistive device. *Id.* The examiner noted intact sensory, reflexes, and motor strength. *Id.* Again the ALJ concluded that no greater limitations than the RFC were required. A.R. 1080.

The ALJ also reviewed the opinion of an impartial psychiatric expert, Dr. Malancharuvil. *Id.* Dr. Malancharuvil agreed with the ALJ's RFC and the ALJ found his opinion to be persuasive and supported by the medical evidence. *Id.* Dr. Malancharuvil was also present at the hearing and listened to Thomas' testimony

7

and provided an updated opinion. A.R. 1080, 1120. He noted that Thomas underwent only conservative treatment and that she is relatively stable on her current medication regiment. A.R. 1080. The ALJ found his opinion the most persuasive, and that it was "most consistent with the objective medical evidence of record regarding the conservative treatment for mental health and the lack of significant and ongoing objective symptomology associated with the claimant's cognition or her ability to interact appropriately with others." *Id.*

In reviewing Thomas' mental impairments, the ALJ notes that the record shows Thomas sought mental health treatment, complained of anxiety and depression, and was prescribed psychotropic mediations and therapy. A.R. 1081. Thomas did not need inpatient psychiatric treatment, and she did not show significant or ongoing abnormality or symptomology. *Id.* The medical record documents Thomas as alert, oriented, and normal as to behavior, judgment, and thought content. *Id.* There are some instances of sporadic symptomology, such as one examination noting Thomas as depressed, paranoid, and impaired as to attention and concentration, but also noted her as "cooperative and normal as to appearance, eye contact, perceptions, activity, intellect, and insight and judgment." *Id.* The sporadic nature of these observations over a six-year timeframe led the ALJ to conclude that this was indicative of Thomas' average daily functioning. *Id.*

Thomas underwent a state agency consultative psychiatric examination as well. A.R. 710. The examiner diagnosed Thomas with bipolar disorder and PTSD and opined that she is "functioning in the normal range of intellectual ability, but that

her attention and concentration, memory ability, and social functioning are all below the average range." A.R. 1081-82, 712. The ALJ, however, found this unpersuasive. A.R. 1082. The ALJ believed this conclusion was based more on Thomas' subjective statements rather than objective observations of her functioning during the exam. *Id.* For example, the ALJ notes that "[w]hile the examiner reported [Thomas] as having an anxious and depressed affect, said mood abnormalities did not result in specific instances of documented abnormal social interaction with the examiner." *Id.* Ultimately, upon consideration of this opinion and that of Dr. Malancharuvil, the ALJ found this opinion unpersuasive. *Id.*

The ALJ next found only somewhat persuasive the state agency medical consultants Dr. Whitley and Dr. Corcoran. A.R. 1082. She found the doctors' opinions on Thomas' postural and environmental limitations somewhat consistent with the overall record as well as explained by the consultants but still adopted the opinion of Dr. Kwock. *Id.* In comparison, she found Dr. Kwock's opinion more consistent in terms of Thomas' limitations. For example, Dr. Kwock opined that Thomas could stand and walk for four hours, while the consultants opined to only two hours. *Id.* The ALJ agreed with Dr. Kwock that the record shows that Thomas never followed up with a specialist and had not had an emergency visit for pain in the last two years, supporting a lesser limitation than Drs. Whitley and Corcoran. *Id.*

Similarly, the ALJ found somewhat persuasive the opinions of state agency psychiatric consultants Dr. Horton and Dr. Shipley. *Id.* While their opinions on her medical impairments mostly matched what Dr. Malancharuvil found, they found

9

limits as to her concentration, persistence and pace (CPP) and social impairments that the ALJ did not find persuasive. A.R. 1083. The doctors used the term "brief" in explaining the amount of social interaction Thomas should be limited to, and they did not explain the quality of interaction Thomas could participate in. *Id.* While the ALJ did still include social limitations in the RFC, she did so based on Dr. Malancharuvil's opinion, who she found explained his opinions well, offered support from the record, and is consistent with the overall record. *Id.* The ALJ specifically pointed to what she saw as only "sporadic cognitive symptomology." *Id.*

The ALJ found the opinion of clinician Mietus to be unpersuasive because Thomas was examined soon after her motor vehicle accident, so subsequent improvements evident in the record outweighed Mietus' opinion. *Id.* The ALJ similarly found unpersuasive the opinion of Dr. Okolocha, who opined that Thomas' foot impairment was severe enough to possibly require amputation. *Id.* However, Dr. Okolocha failed to support her claims with citations to evidence, and they contradicted Dr. Kwock's findings. *Id.*

With the RFC in mind, at step four, the ALJ concluded that Thomas has no past relevant work. A.R. 1084. Based on her RFC and the testimony of the Vocational Expert, the ALJ determined Thomas could perform jobs such as assembler, inspector packer, and general office helper. *Id.* Because the ALJ determined that Thomas could perform work that exists in significant numbers in the national economy, the ALJ concluded that she was not disabled for the relevant time period. *Id.*

**Discussion**

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d

11

731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)). When there is evidence which contradicts an ALJ's determination, that evidence must be specifically addressed and the ALJ must

explain why they are discounting it. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

State agency consultants typical provide opinions in two ways: the narrative explanation of their examination of the claimant and a "checkbox" format on a standardized form. An ALJ should generally address both the narrative and checkbox limitations. *See DeCamp v. Berryhill,* 916 F.3d 671, 676 (7th Cir. 2019). Additional or more specific limitations in the checkbox section should still be addressed when determining an RFC. *Monday v. Commissioner of Social Security*, 2025 WL 865146 at *6-7 (N.D. Ind. Mar. 20, 2025). When consultants note mental impairments, such as issues with concentration, persistence, or pace, an ALJ must take that into account when determining if a claimant can work over the course of a workday. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("We have repeatedly cautioned that 'someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be'"). Finally, such limitations must be adequately encapsulated in any hypothetical posed to a VE. *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) (remanding where the ALJ's hypothetical did not fully account for claimant's moderate difficulties in CPP).

Beyond the narrative and checkbox analysis, an ALJ must be sure to give proper weight to all opinions from consultants and explain any departures from those opinions. This is particularly true if an ALJ rejects or discounts the opinion of a state agency examining physician. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("Rejecting or discounting the opinion of the agency's own examining physician that

13

the claimant is disabled…can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step"). For example, when an ALJ finds that an opinion does not comport with the medical record, they must explain why it does not, rather than simply finding the opinion not persuasive. 20 C.F.R. § 404.1520c(b)(2) (directing an ALJ to consider supportability and consistency when determining persuasiveness). Categorical statements are not sufficient. *Jomarie S. v. Kijakazi*, No. 20-CV-7029, 2022 WL 2105916, at \*4 (N.D. Ill. June 10, 2022) ("The categorical statements made by the ALJ are not supported [by] the record in this case, and a more nuanced discussion regarding the supportability and consistency of the treating psychiatrist's opinion is necessary."). Further, the ALJ must address the deficiencies with particularity, rather than using "boilerplate" language. *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) ("The ALJ's only explanation for finding Plessinger "not entirely credible" was that his "subjective complaints" were "not reasonably consistent with the overall evidence of record." This is language that this court has criticized as "meaningless boilerplate" if the ALJ does not offer more of an explanation for the purported inconsistencies."). As to the weight an ALJ gives differing opinions, the Seventh Circuit has stated a contradictory opinion from a non-examining source is not by itself substantial evidence an ALJ may rely on to reject an examining doctor's medical opinion. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017).

There are limits on how an ALJ may consider a claimant's symptoms and what inferences they may draw from the record. If an ALJ discounts a claimant's

14

symptoms, they are obligated to explain their reasoning and why it is supported by the record. *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). Any evaluation of symptoms must have ample explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Such evaluation should also consider non-medical indicators, such as daily activities or precipitating factors. SSR 16-3p. An ALJ may not simply discount a claimant's subjective allegations of pain, especially when there is corroborating evidence such as use of serious treatment or strong medications. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). For example, an ALJ may not discount allegations of pain simply because it appears the treating physicians took the claimant's statements "at face value." *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004). The severity of symptoms should not be discounted merely because a claimant lacks inpatient hospitalization. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). In fact, relying on a *lack* of inpatient or emergency care to dismiss subjective mental health symptoms may by itself be harmful error. *Rose v. Comm'r of Soc. Sec.*, 2022 WL 1165001, at \*5 (N.D. Ind. Apr. 20, 2022). More specifically for mental health impairments, an ALJ should consider the difference in scale between daily activities and workplace demands; that is, a claimant who has some limitations performing household tasks may struggle more to do similar activities in a workplace. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting critical differences between daily activities and workplace activities, such as flexibility in thoroughness and timing,

15

and the availability of assistance). The ALJ must consider those differences when determining an RFC in light of a claimant's limitations.

Thomas argues three errors on appeal: (1) the ALJ cherry-picked data and crafted an RFC without adequate consideration of all the evidence in the record; (2) the ALJ improperly evaluated the consultative examiners' opinions; and (3) the ALJ ignored certain of Thomas' symptoms. *See* DE 10.

Thomas argues the ALJ ignored mental health limitations—most significantly relating to her concentration, persistence and pace, and neglecting the checkbox portions of certain medical opinions—in determining the RFC. Thomas was noted by Dr. Rini as "nervous/anxious" and that she wanted a referral to a psychiatrist. A.R. 716. Later examinations by Dr. Okolocha also noted anxious behavior. A.R. 817-18, 1633. Her intake in December 2019 noted Thomas with "moderate" anxiety and depression, along with intrusive thoughts. A.R. 1064. In addition to anxiety, Thomas testified that she was unable to focus on watching television. A.R. 68. Dr. Rini noted that her attention and concentration were well below average. A.R. 712. Dr. Horton, a state agency psychiatric consultant noted "sustained concentration and memory limitations." A.R. 89. He also noted understanding and memory limitations, moderately limited attention and concentration for extended periods, moderately limited ability to sustain an ordinary routine without special supervision, and moderately limited "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent

16

pace without an unreasonable number and length of rest periods." A.R. 92-93. Dr. Shipley noted the same. A.R. 130-45.

The ALJ initially addressed Thomas' concentration issues as follows: "The claimant's reported difficulties with household chores and yard work appear to be associated with her allegations that she is unable to bear weight. Therefore, "said difficulties appear to secondary to her physical impairments and not associated with her mental health." A.R. 1076. Later, the ALJ noted that although Thomas appears impaired as to attention and concentration, there was a lack of symptomology. A.R. 1081. Because Thomas appeared normal during examinations, "sporadically documented abnormalities" and "consistently abnormal mood" were sufficiently encapsulated by the moderate limitation. *Id.* It appears the ALJ found Dr. Rini's opinion as to Thomas' social functioning unpersuasive because she relied on "uncritical acceptance of the claimant's subjective complaints" and did not note any specific instances of abnormal social interaction. A.R. 1082. However, the ALJ's decision only addresses why she discounted Dr. Rini's opinion as to Thomas' social functioning.[3] The ALJ says nothing about Dr. Rini's conclusion on Thomas' attention and concentration, and, for example, does not mention that Thomas could only recall one house item out of three after five minutes and failed her serial sevens calculation test. A.R. 711. In her brief, Thomas also notes that depression, which was noted

---

[3] "While the examiner reported the claimant as having an anxious and depressed affect, said mood abnormalities did not result in specific instances of documented abnormal social interaction with the examiner. Therefore, said examination, as well as the aforementioned clinical findings discussion, fail to support the examiner's opinions as to below average social functioning." A.R. 1082.

17

alongside her anxiety, can cause a lack of concentration. DE 10 at 7, n.2. The ALJ does not address this and merely finds the opinion unpersuasive. A.R. 1082. As to Drs. Horton and Shipley, the ALJ likewise appears to address only the social limitations identified by the doctors, but not the attention and concentration limitations. A.R. 1082-83.

This resulted in the above RFC and hypothetical posed to the VE specifying "[t]he claimant is unable to conduct production rate pace work where each task must be completed within a strict time deadline, but the claimant is able to meet end of day goals." It is unclear how the ALJ reached this RFC and whether it incorporates Thomas's documented CPP limitations. In his testimony Dr. Malancharuvil said Thomas is "precluded from highly fast-paced work such as working on a rapid assembly line" but discussed nothing about her ability to concentrate on work tasks. A.R. 1124. The ALJ concluded Thomas could meet end of day goals, but there is nothing in the record to suggest that. The VE testified that someone off task 15% of the time would be precluded from work, but the ALJ asked nothing about Thomas' ability to concentrate. A.R. 1149. While the ALJ noted that Thomas appeared alert and oriented in certain hospital settings, she still disregarded the opinions from a number of examinations and instead favored Dr. Malancharuvil's testimony without adequate explanation.

Because the Seventh Circuit has required more specificity when analyzing a claimant's concentration, persistence, and pace, *see, e.g. Moreno v. Berryhill,* 882 F.3d 722, 729 (7th Cir. 2018), the ALJ has not created a logical bridge from the record to

18

the RFC in regard to Thomas' attention and concentration and ignored evidence to the contrary.

Beyond the ALJ's analysis of Thomas' attention and concentration, Thomas also alleges the ALJ erred in her findings of Dr. Rini's opinion as unpersuasive. As the Seventh Circuit explained in *Beardsley*, a reviewing court should closely scrutinize when an ALJ discounts an opinion from an agency examiner. *Beardsley*, 758 F.3d at 839. This is particularly true when it is discounted in favor of a non-examining doctor's opinion. *Vanprooyen*, 864 F.3d at 572. The strongest statement the ALJ gave for discounting Dr. Rini's opinion was that it was based on Thomas' own subjective statement. A.R. 1082. But in a psychiatric examination, this is the primary method by which a doctor will diagnose a patient. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Though the ALJ alluded to Thomas' lack of overt social functioning deficits as contradicting Dr. Rini's opinion, she did not explain how this made the entire opinion unpersuasive. While this was not overt cherry-picking of evidence, the ALJ should have addressed the other medical evidence that supported Dr. Rini's opinion. *See Ronald A. v. Comm'r of Soc. Sec.*, 2023 WL 2523423, at *4 (N.D. Ind. Mar. 14, 2023) ("even this brief discussion does not ameliorate the lack of analysis of the other medical records."). A more thorough examination of supporting evidence is required to meet the regulations' supportability prong. *Annette C. v. O'Malley*, 2024 WL 4234050, at *4 (S.D. Ind. Sept. 19, 2024) (The ALJ must consider supportability when determining the persuasiveness of a medical opinion). For example, Dr. Rini directly observed and spoke with Thomas, whereas Dr. Malancharuvil, upon whom

19

the ALJ primarily relied concerning Thomas' mental health impairments, only reviewed the record and listened to Thomas' testimony.

For all these reasons, the ALJ erred in her evaluation of Dr. Rini's opinions and failed to support her findings that they were unpersuasive.

Lastly, Thomas argues that the ALJ's conclusions as to the intensity, persistence, and limiting effects of her symptoms were reversible error. DE 10 at 14. First, the ALJ rejected categorizing Thomas' mental impairments as severe because she has not needed inpatient psychiatric treatment or hospitalization. A.R. 1081. The Seventh Circuit has implied that this, on its own, may be reversible error. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (An ALJ speculating that severe symptoms would require institutionalization is medical conjecture that an ALJ is not competent to make). The implication that Thomas' mental health impairments were not serious enough to warrant inpatient treatment does not mean that she was competent to work at the level prescribed by the ALJ. This is especially true in light of other evidence, such as Thomas' use of psychotropic medications (Zoloft, Xanax, and Trazodone). A.R. 1547, 1853-54.

It is possible that the ALJ considered the effectiveness of those drugs as bringing Thomas' mental impairments down in severity and therefore capable of working, but if so, that is not something the ALJ explained in her decision. Thomas' ongoing use of the medications does show, however, corroboration for subjective allegations, a factor which the ALJ should have considered. Other evidence the ALJ should have considered includes Thomas' alleged inability to perform daily tasks like

20

doing her hair, A.R. 71, or bathing and dressing, A.R. 57. An ALJ cannot disregard allegations of limitations in household activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009).

Overall, the throughline of the ALJ's opinion is that she attributed much of Thomas' mental limitations to her physical impairments rather than her mental impairments. However, this is a determination the ALJ could not make on her own. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Without a clear reason for the ALJ to conclude that the physical impairments were the reason for many of Thomas' limitations rather than the mental limitations multiple doctors opined to, the Court is left without a logical bridge to follow the ALJ's reasoning from the evidence to her decision. Furthermore, the ALJ favored the opinions of Drs. Kwock and Malanchuravil to the detriment of all others. While not necessarily error, the ALJ must more clearly explain why she chose to depart from the number of other opinions that concluded Thomas had more serious mental impairments than included in the RFC. The ALJ must be sure to encapsulate these mental impairments when consulting with the VE to ensure the VE provides a fully informed answer to the ALJ's hypothetical.

### Conclusion

For the reasons discussed, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintff.

**SO ORDERED** this 26th day of March 2026.

/s/ *Abizer Zanzi*

MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT